UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re WAYFAIR INC. Securities Litigation<br><br>This Document Relates To:<br>ALL ACTIONS. | Civil Action No. 1:19-cv-10062-DPW<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**LEAVE TO FILE GRANTED<br>OCTOBER 17, 2019** |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

Roberto M. Braceras (BBO # 566816)
Caroline H. Bullerjahn (BBO # 657241)
Ian Stearns (BBO # 693374)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
rbraceras@goodwinlaw.com
cbullerjahn@goodwinlaw.com
istearns@goodwinlaw.com

*Counsel for Defendants*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT..............................................................................................................................2

I.    THE AC FAILS TO ALLEGE ANY INFERENCE OF SCIENTER, MUCH
      LESS THE REQUIRED STRONG INFERENCE. ............................................................2

      A.    The AC Does Not Come Close To Alleging Unusual Or Suspicious Trading. ........2

      B.    Plaintiff Alleges Zero Particularized Facts About Defendants' Knowledge
            Necessary To Raise A Strong Inference Of Intent Or Extreme Recklessness.........5

      C.    The Competing Innocent Inference Is Far More Cogent And Compelling .............8

II.   THE AC STILL FAILS TO PLEAD ANY ACTIONABLE MISSTATEMENTS
      OR OMISSIONS AND LOSS CAUSATION....................................................................9

CONCLUSION..........................................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
    512 F.3d 46 (1st Cir. 2008)........................................................................................................8

*In re Atl. Power Corp. Sec. Litig.*,
    98 F. Supp. 3d 119 (D. Mass. 2015) .........................................................................................8

*In re Biogen Inc. Sec. Litig.*,
    193 F. Supp. 3d 5 (D. Mass. 2016) ......................................................................................3, 10

*In re Biogen Inc. Sec. Litig.*,
    857 F.3d 34 (1st Cir. 2017)................................................................................................3, 7, 9

*In re Bos. Sci. Corp. Sec. Litig.*,
    686 F.3d 21 (1st Cir. 2012)........................................................................................................5

*Brennan v. Zafgen, Inc.*,
    199 F. Supp. 3d 444 (D. Mass. 2016) .......................................................................................3

*Brennan v. Zafgen, Inc.*,
    853 F.3d 606 (1st Cir. 2017)...........................................................................................3, 4, 5, 9

*Brumbaugh v. Wave Sys. Corp.*,
    416 F. Supp. 2d 239 (D. Mass. 2006), ................................................................................3, 10

*In re Cabletron Sys., Inc.*,
    311 F.3d 11 (1st Cir. 2002).......................................................................................................6

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
    632 F.3d 751 (1st Cir. 2011)............................................................................................2, 3, 4

*Cody v. Conformis, Inc.*,
    199 F. Supp. 3d 409 (D. Mass. 2016) .......................................................................................6

*Collier v. ModusLink Glob. Sols., Inc.*,
    9 F. Supp. 3d 61 (D. Mass. 2014) .........................................................................................4, 6

*Coyne v. Metabolix, Inc.*,
    943 F. Supp. 2d 259 (D. Mass. 2013) ........................................................................1, 5, 6, 7, 10

*Crowell v. Ionics, Inc.*,
    343 F. Supp. 2d 1 (D. Mass. 2004) ...........................................................................................3

ii

*Dahhan v. OvaScience, Inc.*,
    321 F. Supp. 3d 247 (D. Mass. 2018) ...............................................................................6

*Emerson v. Genocea Biosciences, Inc.*,
    353 F. Supp. 3d 28 (D. Mass. 2018) ............................................................................3, 4

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
    778 F.3d 228 (1st Cir. 2015) ...................................................................................4, 5, 9

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999) ..........................................................................................2

*Hensley v. Imprivata, Inc.*,
    260 F. Supp. 3d 101 (D. Mass. 2017) ...........................................................................10

*Inst. Inv'rs Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ...........................................................................................7

*Local No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharm., Inc.*,
    838 F.3d 76 (1st Cir. 2016) ............................................................................................4

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ..........................................................................................7

*Metzler Asset Mgmt. GmbH v. Kingsley*,
    928 F.3d 151 (1st Cir. 2019) ..........................................................................................7

*Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*,
    523 F.3d 75 (1st Cir. 2008) .........................................................................................4, 8

*N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
    537 F.3d 35 (1st Cir. 2008) ............................................................................................5

*In re Ocular Therapeutix, Inc. Sec. Litig.*,
    2019 WL 1950399 (D. Mass. Apr. 30, 2019) .............................................................7, 10

*In re Parametric Tech. Corp.*,
    300 F. Supp. 2d 206 (D. Mass. 2001) ...........................................................................10

*Shaw v. Dig. Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996) ..........................................................................................8

*Sousa v. Sonus Networks, Inc.*,
    261 F. Supp. 3d 112 (D. Mass. 2017) ..........................................................................9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................................8

**Statutes**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* ...................... *passim*

**Other Authorities**

SEC Rule 10b5-1, 17 C.F.R. § 240.10b5-1 ................................................................................4, 5

**PRELIMINARY STATEMENT**

Absent from Plaintiff's Opposition ("Opp.") and the AC[1] is a single specific fact known by the Defendants about Wayfair's third quarter 2018 advertising leverage, which eventually fell short—by mere decimal points—of the Company's forward-looking projections issued months earlier.  Instead, the Opposition recycles the AC's "fraud by hindsight" allegations, retreats from First Circuit law, and concedes facts that negate any inference of scienter.  Plaintiff concedes that the AC lacks a single confidential witness allegation or any other particularized fact necessary to, in this Court's words, "support[] the inference that Defendants knew that a statement was false or misleading" when made, and merely "[p]ays lip service to allegations of motive."  *Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 271, 271-72 (D. Mass. 2013).  Plaintiff also does not (and cannot) dispute that the Defendants increased or retained nearly all of their Wayfair holdings, and that all of their Class Period stock sales were non-discretionary.  Given these concessions, the AC's "anemic accusations cannot sustain Plaintiff's claims" under the PSLRA.  *Id.* at 269.

Confronted with the lack of scienter allegations, the Opposition asks the Court to reach unprecedented conclusions contradicting First Circuit precedent.  For example, Plaintiff asks the Court to ignore the Defendants' judicially noticeable SEC Forms 4—an argument that (i) no court within the First Circuit has ever adopted, and (ii) was rejected by precedent relied upon in Plaintiff's *own* brief.  He nevertheless asks the Court to find a strong inference of motive based on stock sales that are indistinguishable from those the First Circuit has held "negate any inference" of scienter.  He asks the Court to accept a "must have known" theory of scienter based on the Defendants' positions and "access to" unspecified information, allegations that First Circuit courts have uniformly rejected.  And he asks the Court to ignore the strong non-

---

[1]  All (i) abbreviations are defined as set forth in the Memorandum of Law in Support of Defendants' Motion to Dismiss ("Mot."), (ii) internal alterations, citations, and quotation marks are omitted, and (iii) emphasis is added.

fraudulent inferences supported by Wayfair's public disclosures as purportedly "improper" even though the PSLRA, Supreme Court, and First Circuit mandate the weighing of such inferences.

After nearly a year of litigation, two complaints, 143 paragraphs of conclusory allegations, and a 25-page Opposition, Plaintiff still has not identified with particularity (i) a single fact supporting a strong inference that Defendants knew information contradicting their statements about Wayfair's advertising leverage, or (ii) a single specific stock sale that is unusual. The AC should therefore be dismissed with prejudice for failure to plead facts supporting any inference of scienter, much less the requisite strong inference. Independently, the AC should be dismissed for failure to plead an actionable misrepresentation or omission (on multiple grounds) and loss causation.

## ARGUMENT

I.   **THE AC FAILS TO ALLEGE ANY INFERENCE OF SCIENTER, MUCH LESS THE REQUIRED STRONG INFERENCE.**

A.   **The AC Does Not Come Close To Alleging Unusual Or Suspicious Trading.**

The Opposition concedes that (i) Plaintiff's motive allegations depend entirely on Defendants' Class Period stock sales, (ii) it is Plaintiff's burden to plead particularized facts supporting a strong inference that these sales were "suspicious," and (iii) satisfying this burden requires showing that the sales "[a]t a minimum [are] unusual, ***well beyond the normal patterns***." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 198 (1st Cir. 1999); Opp. 18. But Plaintiff failed to respond to the AC's glaring hole in its "motive" theory: its failure to compare Defendants' Class Period stock sales to (i) their sales during other time periods, and (ii) their relative Wayfair holdings. *Compare* Mot. 15-16 & n.9, *with* Opp. 18, 20-22. The First Circuit has consistently held that such comparisons are ***required*** to raise a strong inference that stock sales are "well beyond the normal patterns." *See, e.g.*, *City of Dearborn Heights Act 345 Police*

2

*& Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 761 (1st Cir. 2011) (rejecting trading allegations because "complaint provided no information about [defendant's] trading history"); Mot. 16 & n.9 (collecting cases). Plaintiff's failure to respond to this precedent alone is fatal, and the Court need not go any further in rejecting the AC's unsupported "motive" allegations.[2]

In any event, the Opposition does not dispute two facts about Defendants' Class Period stock sales, both of which independently negate any inference of Defendants' purported fraudulent motive: each Defendant (i) retained nearly all of or even increased their Wayfair holdings; and (ii) executed every supposedly "suspicious" Class Period sale on a non-discretionary basis. Opp. 20-21; Mot. 16-17. Because Plaintiff cannot dispute these facts, he instead implores the Court to ignore them and disregard Defendants' SEC Forms 4, contending that consideration of these public filings is "improper at the pleading stage." Opp. 20 & n.15. But Plaintiff: (i) overlooks that First Circuit courts have universally taken judicial notice of Forms 4 at the pleading stage in securities cases;[3] (ii) does not cite a single First Circuit case where a court declined to do so; and (iii) relies on precedent cited repeatedly in his own brief holding that "Defendants [] correctly state that this Court may take judicial notice of the Form[s] 4." *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 15 n.7 (D. Mass. 2004). Plaintiff then attacks strawmen to distract from these unsuspicious and undisputed facts:

- Plaintiff does not refute that Mr. Fleisher increased his Wayfair holdings during the Class Period and that Mr. Shah and Mr. Conine each retained 98% of their holdings. Mot. 16-17. So, he argues that "there is no **requirement** that the stock sales exceed a certain percentage of

---

[2] Ignoring more recent First Circuit precedent requiring such comparisons, the Opposition cites only one older case, arguing that there is no "requirement that sales during the Class Period *exceed* sales from other periods." Opp. 21. But even in that case the court acknowledged that where, as here, a plaintiff "relie[s]" on trading allegations, a "failure to illustrate how such sales were inconsistent with past trading practices might be fatal." *Brumbaugh v. Wave Sys. Corp.*, 416 F. Supp. 2d 239, 254 (D. Mass. 2006).

[3] *See, e.g.*, *In re Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d 5, 49 (D. Mass. 2016), *aff'd*, 857 F.3d 34 (1st Cir. 2017) (finding stock sales not suspicious where defendant's holdings "*increased* during the class period according to the publicly-filed SEC Forms 4"); *Brennan v. Zafgen, Inc.*, 199 F. Supp. 3d 444, 469 (D. Mass. 2016), *aff'd*, 853 F.3d 606 (1st Cir. 2017) (same, where defendant retained nearly all of his holdings); *Emerson v. Genocea Biosciences, Inc.*, 353 F. Supp. 3d 28, 42 (D. Mass. 2018) (Saris, C.J.) (considering "various defendant officers' Form 4s").

3

Defendants' total holdings." Opp. 21. But the First Circuit has held that nearly identical stock sales "negate[] *any* inference" of motive. *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 238, 246 (1st Cir. 2015) (one defendant's increase in holdings and second defendant's retention of 93% "negates any inference" of motive); *see Brennan*, 853 F.3d at 616 (retaining 93% not suspicious); *Waters Corp.*, 632 F.3d at 761 (same, 95%).[4]

- Plaintiff does not dispute that *every* Class Period sale was non-discretionary, executed either under Rule 10b5-1 trading plans or for tax-withholding purposes. Mot. 17. He merely argues that 10b5-1 plans "fail[] to negate scienter" where—unlike here—"there is no evidence of when the trading plans went into effect." Opp. 22 (citing *Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 92 (1st Cir. 2008)). But Plaintiff ignores that, as Defendants' Motion noted and their pre-Class Period Forms 4 in the record demonstrate, these "pre-existing" Rule 10b5-1 plans were "adopted [] before the Class Period." Mot. 17 n.13. It is well-established in this Circuit that a pre-existing 10b5-1 plan "rebuts an inference of scienter and supports the reasonable inference that stock sales were pre-scheduled and not suspicious." *See, e.g.*, *Emerson*, 353 F. Supp. 3d at 42.

While the Opposition vaguely avers that "several significant" sales occurred "within a few trading days" after the alleged misstatements, and "within a few days" before the end of the Class Period, it tellingly fails to actually identify a single "suspicious" trade. Opp. 18. Plaintiff provides no case (First Circuit or otherwise) holding that such generic allegations are sufficient. In any event, the AC's own allegations (AC ¶¶ 101-03) reveal that there is no pattern between the alleged misstatements and the stock sales; rather, the sales are "perfectly understandable [and] innocent" because Defendants sold "consistent[]"amounts "on a more or less weekly basis." *Local No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc.*, 838 F.3d 76, 84-85 (1st Cir. 2016); Mot. 16.

The First Circuit has rejected far more "unusual" trading allegations than (i) Mr. Fleisher's increase in Wayfair holdings, (ii) Mr. Shah's and Mr. Conine's retention of 98% of their holdings, and (iii) each defendant's reliance on pre-existing non-discretionary Rule 10b5-1

---

[4] Plaintiff offers only one factually inapposite case to support his argument and distorts its holding. In *Collier*, where the plaintiff did not allege *any* stock sales, the court held that the lack of such allegations was not sufficient to undercut strong non-motive scienter allegations (absent here): particularized allegations from six confidential witnesses; executive resignations; and, a financial restatement. *See Collier v. ModusLink Glob. Sols., Inc.*, 9 F. Supp. 3d 61, 74-75 (D. Mass. 2014).

4

plans. *See, e.g.*, *N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 42, 56 (1st Cir. 2008) ("no strong inference" of motive where three defendants sold "virtually all" of their holdings, including one defendant who was charged by the SEC and resigned).[5]

### B. Plaintiff Alleges Zero Particularized Facts About Defendants' Knowledge Necessary To Raise A Strong Inference Of Intent Or Extreme Recklessness.

The Opposition admits that under the PSLRA, the AC must "allege[] with particularity" facts giving rise to a "strong inference" of scienter, which the First Circuit has explained requires "intentional or willful conduct designed to deceive" or a "high degree of recklessness" involving "an extreme departure from the standards of ordinary care." Opp. 15; Mot. 10. Given this "rigorous pleading standard on allegations of scienter," *Abiomed*, 778 F.3d at 240, complaints meeting this standard "often contain[] clear allegations of admissions, internal records or witnessed discussions" showing that at the "time they made the statements claimed to be misleading, the defendant[s] [] were aware that they were withholding vital information or at least were warned by others that this was so." *In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012). Conversely, where (as here) a plaintiff offers no such "admissions, internal records or witnessed discussions," First Circuit courts have emphasized that dismissal is "especially warranted." *Brennan*, 853 F.3d at 615; *see* Mot. 11-12 (collecting cases).

Tellingly, the Opposition does not substantively address this precedent. *See* Opp. 15-23. Plaintiff concedes that the AC lacks any confidential witness allegations, admissions, or internal records (Opp. 19), and therefore that it does not allege (i) any ***particularized*** facts about the Defendants' knowledge, much less (ii) any facts "demonstrating that Defendants knew the information that [Plaintiff] alleges contradicted their public statements." *Coyne*, 943 F. Supp. 2d

---

[5] Tellingly, Plaintiff retreats from his trading allegations in a footnote, stating that "[e]ven if the Court were to accept [Defendants'] arguments, and disregard Defendants' stock sales entirely," the absence of such "motive allegation[s]" is not fatal. Opp. 22 n.17. But, here, the lack of trading allegations is fatal to Plaintiff's claims, as the AC contains no other particularized allegations to support any inference of motive or recklessness. *See* Section I.B.

at 271.  Accordingly, "[t]here is no way, from the allegations in the [] complaint, to infer what [D]efendants knew or when." *Id.* at 273.  Plaintiff contends, however, that a strong inference of scienter "does not require" confidential witness allegations or other "direct evidence" of knowledge, arguing that the First Circuit "has rejected any rigid formula for pleading scienter." Opp. 19 (citing *In re Cabletron Sys., Inc.*, 311 F.3d 11, 38 (1st Cir. 2002)).  But in *Cabletron*, there *was* "direct evidence" of the defendants' knowledge: "consistent details provided from at least half a dozen different" former employees who had "direct knowledge" of the defendants' awareness of the fraudulent schemes, coupled with other strong scienter allegations, such as the defendants' sales of more than 90% of their stock and resignations.  *See Cabletron*, 311 F.3d at 27, 30-33.  And compared to ample First Circuit precedent (Mot. 11-12) dismissing complaints without "the[se] typical hallmarks of scienter," *Cody v. Conformis, Inc.*, 199 F. Supp. 3d 409, 421 (D. Mass. 2016), the Opposition cites to a mere *two* outlier cases in this District in the past *decade* finding a strong inference of scienter.  *See* Opp. 15-23.  In those two cases, the ample, direct, and particularized allegations of the defendants' knowledge of facts contradicting their public statements only highlight the absence of any such allegations here.[6]

Unable to cite any particularized facts that Defendants knew contradicting their statements about Wayfair's projected advertising leverage, the Opposition resorts to a fraud-by-hindsight "must have known" theory: "[i]t defies common sense," according to Plaintiff, that Defendants did not know in August and early September 2018 that months later, in November 2018, Wayfair would miss its projected advertising leverage by a few tenths of one percent.

---

[6]  First, in *Collier*, the court found the following allegations supported a strong inference of scienter: (i) allegations of the defendants' knowledge of improper accounting from *six* confidential witnesses—who "reported directly" to and "interacted" with the defendants; (ii) an SEC investigation; (iii) the CEO's resignation; and (iv) an accounting restatement.  *See Collier*, 9 F. Supp. 3d at 70-76.  Second, in *Dahhan*, the defendants, while stating publicly that they would sell 1,000 cycles of their treatment in 2015, later admitted that they knew they had sold only 17 cycles during the first eight months of the year, and meanwhile "ceased providing quarterly metrics" publicly to "conceal poor sales figures." *Dahhan v. OvaScience, Inc.*, 321 F. Supp. 3d 247, 251, 255-56 (D. Mass. 2018).

6

Opp. 18-19. This is nothing more than a "general averment of the [D]efendant[s'] 'knowledge' of material falsity," and this Court has recognized that such "must have known" allegations are "uniformly held inadequate." *Coyne*, 943 F. Supp. 2d at 273 ("The PSLRA puts the onus on [Plaintiff] to take careful aim and pinpoint the particular facts capable of demonstrating that [the defendant] knew it could not possibly meet its predictions."); *see* Mot. 12-13. Ignoring First Circuit precedent rejecting such allegations, Plaintiff contends that "several indicia" support this "must have known" scienter theory, going so far as to distort holdings of out-of-Circuit cases:

- *Defendants' Positions*: Plaintiff contends that because Defendants "served as Wayfair's designated representatives for communicating" about advertising leverage, it was "exceedingly unlikely" that they did not know that Wayfair would eventually miss its third quarter projection by decimal points. Opp. 16. This "must have known" argument simply repackages the AC's "high-ranking" positions allegation (AC ¶ 93), but as this Court has repeatedly held, it is "well established" that it is "not sufficient" to base allegations of scienter on a defendant's position. *Coyne*, 943 F. Supp. 2d at 272; *see* Mot. 13.[7]

- *Defendants' Statements*: Plaintiff argues that the "most powerful" evidence that Defendants must have known facts contradicting their projections is their specific, repeated statements. Opp. 16; AC ¶ 94. But Plaintiff disregards the First Circuit's unequivocal rejection of the "contention that the defendants' repeated specific statements about [the topic] show that they knew that their public disclosures were misleading when made." *Metzler Asset Mgmt. GmbH v. Kingsley*, 928 F.3d 151, 166 (1st Cir. 2019); *see* Mot. 14-15.[8]

- *Core Operations*: Plaintiff asserts that because advertising leverage was "critical to Wayfair's financial strength," Defendants must have known that they would barely miss a quarterly projection months later. Opp. 16-17. This reliance on the "core operations" doctrine is misplaced for two reasons. First, the First Circuit has held that such allegations are "inapt" and "clearly fall short" where, as here, the complaint "does not establish that [] there existed reasonably accessible data within the company materially contradicting th[e] statements" at the relevant time. *Biogen*, 857 F.3d at 44. Second, "[t]he core operations argument is nothing more than a rhetorical flourish," and courts have not accepted it "without other significant evidence of a defendant's intent or recklessness, or a 'plus factor.'" *In re Ocular Therapeutix, Inc. Sec. Litig.*, 2019 WL 1950399, at *9 (D. Mass. Apr. 30, 2019).

- *Access to Information*: Plaintiff attempts to convert Defendants' statements about advertising leverage into "admissions" that they were "monitoring *specific* data," contending

---

[7] *See* Opp. 16; *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711-712 (7th Cir. 2008) ("exceedingly unlikely" defendant did not know facts contradicting statements based on allegations of 26 confidential witnesses).

[8] *See* Opp. 16; *Inst. Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 270-71 (3d Cir. 2009) (six confidential witnesses "allege[d] widespread discounting" that Defendants knew about but publicly denied in defending accounting).

7

that Defendants must have known information contradicting their statements.  Opp. 17; AC ¶¶ 94-96.  Citing no precedent or alleging any actual "specific" data, Plaintiff does not respond to repeated First Circuit holdings that "access to information" allegations fail where, as here, there is no "indication of the specific factual content of any single report."  *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1224 n.38 (1st Cir. 1996); Mot. 13-14 & n.8.

- ***Temporal Proximity***: Plaintiff contends that due to the purported "close proximity" between Wayfair's November 2018 release of third quarter earnings and Defendants' statements months earlier in August and early September 2018, they must have known that the advertising leverage projection would fall short by a few tenths of one percent.  Opp. 18 & n.11.  But the Opposition hides from its citation to *Boston Scientific* (its only First Circuit case for this argument) that (i) the Court held that "temporal proximity alone is insufficient," and (ii) the "very short amount of time" there involved ***one week*** between the alleged misstatements and the disclosure.  *Bos. Sci.*, 523 F.3d at 91.  Conversely, courts discard "temporal proximity" allegations like those here that involve periods of several months.  *See, e.g., In re Atl. Power Corp. Sec. Litig.,* 98 F. Supp. 3d 119, 133-34 (D. Mass. 2015).

Accordingly, the Court should reject Plaintiff's purported "indicia" of scienter, which (i) are nothing more than poor disguises for Plaintiff's impermissible "must have known" theory, and (ii) only highlight the AC's lack of particularized allegations.

### C.      The Competing Innocent Inference Is Far More Cogent And Compelling.

The Opposition does not (i) actually argue that the AC's illogical inference of scienter is, as the PSLRA requires, "compelling," or (ii) dispute any of the facts drawn from Wayfair's SEC filings that reinforce the obvious non-fraudulent inference: the Company unexpectedly and barely missed a forward-looking quarterly financial projection.  *Compare* Opp. 22-23, *with* Mot. 17-19.  Instead, Plaintiff asks the Court ***not*** to weigh the innocent inferences, attacking them as "improper."  Opp. 22-23.  But as the First Circuit has held, the PSLRA "mandates" what Plaintiff tellingly seeks to avoid:

> The Supreme Court [in *Tellabs*] affirm[ed] our view that competing inferences should be weighed against plaintiffs' preferred interpretation of the facts. While it may be unusual for courts to weigh competing inferences from facts, Congress mandated this review in the PSLRA.

*ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 59 (1st Cir. 2008).  The inference that Wayfair barely missed a quarterly projection that it had provided months earlier is supported by

8

the following facts that the Opposition does not dispute, all of which the First Circuit has

credited in affirming dismissals of more cogent scienter theories than alleged here:

- Wayfair disclosed accurate advertising expenses, which showed them consistently declining as a percentage of revenue on a year-over-year basis leading into the Class Period (*i.e.*, increasing advertising leverage).  *See* Mot. 6-7; *Abiomed*, 778 F.3d at 244 (criticizing "Plaintiffs' brief [for] gloss[ing] over these disclosures" that "undercut any inference of scienter").

- Nevertheless, Wayfair provided ample cautionary warnings about increasing advertising expenditures on a gross basis, and that its strategy "may not result in the cost-effective acquisition of customers."  *See* Mot. 5-6; *Brennan*, 853 F.3d at 618 (cautionary warnings "both before and during the class period further undercut any inference" of scienter).

- In fact, Wayfair projected that third quarter 2018 advertising leverage would ***decline*** sequentially and show only a "***modest***" increase versus the previous year's third quarter. Mot. 7-8; *Biogen*, 857 F.3d at 42 (no scienter where "defendants were cautious in projecting [] growth").  Further, Wayfair missed this projection by mere decimal points.  *See* Mot. 8-9; *Abiomed*, 778 F.3d at 243 ("marginal materiality" of statements "weighs against" scienter).

- Defendants collectively lost more than $350 million of their own money when the stock price temporarily declined in November 2018—because they retained or increased their holdings. *See* Mot. 16-17, Exs. M-O; *Biogen*, 857 F.3d at 44 (fact that "defendants in fact suffered losses as a result of [company's] decline in stock price" also "cuts against scienter").

Conversely, the First Circuit has repeatedly rejected the AC's theory as "little more than

pleading fraud by hindsight"—"defendants must have known" earlier "because something

eventually went wrong," *id.* at 43—and the Opposition tellingly does not respond to the fact that

courts have found the same inferences upon which the AC relies not only insufficient, but

"implausible."  *See* Opp. 22-23; *Sousa v. Sonus Networks, Inc.*, 261 F. Supp. 3d 112, 120-21 (D.

Mass. 2017) ("implausible" that defendants would issue a projection "that they knew to be likely

wrong, with the almost certain prospect of having to publicly correct [it]" months later).

## II.   THE AC STILL FAILS TO PLEAD ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS AND LOSS CAUSATION.

Independently, Plaintiff's retreat from Defendants' arguments confirms that the AC does

not allege an actionable misstatement or omission, or plead loss causation. *See* Mot. 19-25.[9]

- ***Puffery***: Rather than counter precedent holding that the AC's purported misstatements like "we are delighted with [our] progress" are puffery, Plaintiff instead argues that evaluating puffery "requires a fact-based analysis that is premature at the pleading stage." Opp. 7. Not so. *See Biogen*, 193 F. Supp. 3d at 41-42 (similar "quintessential expressions of corporate optimism" are not actionable as a matter of law); *Sousa*, 261 F. Supp. 3d at 118-19 (same).[10]

- ***Opinions***: Further, Plaintiff all but concedes that the AC's statements prefaced by "I think" are non-actionable opinions. Opp. 8; *see Ocular*, 2019 WL 1950399, at *8 (statements prefaced by "think" are "protected statement[s] of opinion"). And while opinion statements "can be misleading" under *Omnicare*, Plaintiff has alleged zero facts that Defendants "did not in fact hold the stated opinion or omitted material facts." *Ocular*, 2019 WL 1950399, at *8.

- ***Forward-Looking Statements***: Plaintiff contends that Defendants' forward-looking projections of third quarter advertising leverage in releasing Wayfair's second quarter earnings are not forward-looking because the third quarter was "underway" at the time. Opp. 13. But Plaintiff does not and cannot cite any case for the proposition that financial projections made in a quarterly earnings announcement (which every public company necessarily issues once the next quarter is "underway") are not forward-looking. *See Hensley v. Imprivata, Inc.*, 260 F. Supp. 3d 101, 112, 120 (D. Mass. 2017) (projection of Q3 revenue in Q2 earnings release was "not actionable under PSLRA's safe harbor" even though it "turned out to be inaccurately optimistic"). The PSLRA immunizes Defendants' forward-looking statements on two bases: (i) they were accompanied by meaningful cautionary language (*see* Mot. Ex. A); and (ii) the AC does not come close to alleging that Defendants had "actual knowledge" that the projections would barely fall short. Mot. 20-22.[11]

## CONCLUSION

For the reasons in the Motion and herein, the Court should dismiss the AC with prejudice.

---

[9] Plaintiff argues that by quoting this Court's decision in *Coyne*, Defendants "misstate[] and misapprehend[] proper pleading of loss causation." Opp. 24. But *Coyne* correctly states the pleading standard, and the AC fails to satisfy that pleading standard because it does not "connect" Wayfair's stock price drop on November 1, 2018 to the correction of some previous "misleading statement." *Coyne*, 943 F. Supp. 2d at 273-74. The AC's own allegations undercut Plaintiff's theory: Wayfair's stock price fell again in May 2019 (AC ¶¶ 85-88)—months after the purported "corrective disclosure"—because of disappointing first quarter 2019 earnings, not some earlier misstatement.

[10] Plaintiff contends that "the puffing concept" has "all but gone the way of the dodo." Opp. 7. But in the case cited, the court found that exact quote "hyperbolic" and noted that certain statements—like a company "position[ed] . . . for long term growth"—are "classic" non-actionable puffery. *Brumbaugh*, 416 F. Supp. 2d at 250 n.11.

[11] In a footnote, Plaintiff argues that Defendants' statements beginning conference calls by invoking the Company's cautionary language in SEC filings were inadequate "vague cross-references." Opp. 15 n.8. Courts have rejected this proposition as directly contradicting the PSLRA and "almost silly." *In re Parametric Tech. Corp.*, 300 F. Supp. 2d 206, 219-20 (D. Mass. 2001) (oral cross-references "were adequate to invoke the statutory safe harbor").

Dated: November 12, 2019

Respectfully submitted,

WAYFAIR INC., NIRAJ SHAH, STEVEN K. CONINE, and MICHAEL D. FLEISHER

By their attorneys,

/s/ Roberto M. Braceras
Roberto M. Braceras (BBO # 566816)
Caroline H. Bullerjahn (BBO # 657241)
Ian Stearns (BBO # 693374)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
rbraceras@goodwinlaw.com
cbullerjahn@goodwinlaw.com
istearns@goodwinlaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 12, 2019.

/s/ Roberto M. Braceras

11